UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MATTHEW P.,

                        Plaintiff,

v.                                                                              3:20-cv-01586 (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC | JUSTIN M. GOLDSTEIN, ESQ. |
| *Counsel for Plaintiff*<br>6000 North Bailey Ave, Suite 1A<br>Amherst, NY 14226 | KENNETH HILLER, ESQ. |
| SOCIAL SECURITY ADMINISTRATION<br>OFFICE OF THE GENERAL COUNSEL<br> *Counsel for Defendant*<br>J.F.K. Federal Building, Room 625<br>15 New Sudbury Street<br>Boston, MA 02203 | HEATHER M. LACOUNT, ESQ. |

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION AND ORDER

Matthew P. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant or Commissioner") denying his request for disability insurance benefits. (Dkt. No. 1.) This case has proceeded in accordance with General Order 18 of this Court. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a Magistrate Judge. (Dkt. No. 6.) Both parties have filed briefs. (Dkt. Nos. 12, 16.) For the reasons set forth below, the matter is reversed and remanded for further administrative proceedings.

**I.**     **BACKGROUND**

Plaintiff was born in 1961, has a high school education, and previously worked as a construction laborer and mason.  (Dkt. No. 8-2[1] at 41-42; Dkt. No. 8-6 at 2, 7.)  On April 26, 2019, Plaintiff filed for disability insurance benefits alleging disability beginning October 25, 2018, due to congestive heart failure and emphysema.  (Dkt. Nos. 8-2 at 27; 8-6 at 2-6.)  When the application was denied, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (Dkt. No. 8-4 at 31-35.)  ALJ John P. Ramos held a hearing on February 25, 2020, and a supplemental hearing on July 9, 2020.  (Dkt. No. 8-2 at 35, 64.)  The ALJ denied Plaintiff's claim for benefits on July 20, 2020, and the Appeals Council denied Plaintiff's request for review on October 26, 2020.  (Dkt. Nos. 1-1, 8-2 at 2-19.)  Plaintiff now seeks this Court's review.  (Dkt. No. 1.)

## II.    STANDARD OF REVIEW

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).[2]  The reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  If the ALJ applied the correct legal standards, the reviewing court must determine whether the ALJ's decision is supported by substantial evidence.  *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983).  "Substantial evidence means more than a mere scintilla."  *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.;*

---

[1] The Administrative Transcript is found at Dkt. Nos. 8-2 through 8-7.  Citations to the Administrative Transcript will refer to the page numbers the Court's CM/ECF electronic filing system assigns.  All other citations to documents also refer to the pagination generated by the Court's electronic filing system, CM/ECF.
[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.  *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

*see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive.  *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).

Remand may be appropriate if inadequacies in the ALJ's decision frustrate meaningful review.  *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).  Remand may accordingly be appropriate where the ALJ has failed to develop the record, *Klemens v. Berryhill*, 703 F. App'x 35, 38 (2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999), adequately appraise the weight or persuasive value of witness testimony, *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019); *Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008), or explain its reasoning, *Klemens*, 703 F. App'x at 36-38; *Pratts*, 94 F.3d at 39.

### III.   DISCUSSION

#### A.   The ALJ's Decision

The ALJ denied Plaintiff's claim, concluding Plaintiff "did not have a medical determinable impairment prior to his date last insured of December 31, 2018."  (Dkt. No. 1-1 at 8).  The ALJ rests this conclusion on three findings.

First, the ALJ found the opinion of Dr. Steven L. Shilling, the non-examining consultant called to testify by the ALJ at the hearing, "to be persuasive, based on his professional expertise, program expertise, and ability to review the entire record."  *Id.*  In relevant part, the ALJ found persuasive Dr. Shilling's opinion that Plaintiff did not have a medically determinable impairment "between October 25, 2018 and December 31, 2018," because his medical records from six years prior in 2012, "demonstrated a resolution of the claimant's cardiac condition."  *Id.*  The ALJ further found persuasive Dr. Shilling's observation that "prior to seeking medical care in April of 2019, the claimant had neither sought any medical follow-up nor taken any medications for the

previous three years." *Id.* Second, the ALJ found the opinions of the State Agency medical consultants to be persuasive. *Id.* The ALJ found persuasive their opinions that "the evidence of record was insufficient to determine whether the claimant was disabled prior to his date last insured of December 31, 2018." *Id.* Finally, the ALJ concluded "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment in the claimant . . . from his alleged disability onset date of October 25, 2018 through his date last insured of December 31, 2018." *Id.* at 8-9.

### B. Plaintiff's Claims

Plaintiff claims the ALJ failed to follow the appropriate legal standards and failed to credit the factual record. (Dkt. No. 12.) More specifically, Plaintiff claims: (1) the ALJ failed to apply the correct legal standards at step two of the five-step evaluation, (2) the ALJ failed to apply the correct legal standards in evaluating medical opinion evidence, and (3) the ALJ failed to credit the factual record. (Dkt. No. 12.) In response, Defendant contends the ALJ's decision applies the correct legal standards and is supported by substantial evidence. (Dkt. No. 16.)

### C. Step Two Analysis

#### 1. Legal Standard[3]

"At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities." *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012) (citing 20 C.F.R. §§ 404.1520(c)); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). "The following are examples of basic work activities: walking, standing, sitting, lifting, pushing, pulling,

---

[3] **While the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably."** ***Donato v. Sec'y of Health and Human Servs.***, **721 F.2d 414, 418 n.3 (2d Cir. 1983).**

reaching, carrying, or handling . . . seeing, hearing, and speaking . . . understanding, carrying out, and remembering simple instructions . . . use of judgment . . . responding appropriately to supervision, co-workers and usual work situations." *Zenzel*, 993 F. Supp. 2d at 152; *see also* 20 C.F.R. § 404.1594(b)(4).

"Plaintiff's burden at step two is not heavy." *Marcus L. v. Comm'r of Soc. Sec.*, No. 20-CV-0167MWP, 2021 WL 4204981, at *3 (W.D.N.Y. Sept. 16, 2021). "A claim may be denied at step two only if the evidence shows that the individual's impairments do not have more than a minimal effect on the person's physical or mental abilities to perform basic work activities." *Schafenberg v. Saul*, 858 F. App'x 455, 456 (2d Cir. 2021); *see also Zenzel*, 993 F. Supp. 2d at 152. "If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process." *Schafenberg*, 858 F. App'x at 456. "Indeed, the standard for a finding of severity under step two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *Id.* (quoting *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014)).

The claimant can satisfy this standard with evidence from before or after the relevant time period. *Lake v. Colvin*, No. 3:14-CV-1394, 2016 WL 2757750, at *7 (N.D.N.Y. May 12, 2016) (citing *Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989)); *see also Parker v. Harris*, 626 F.2d 225, 232 (2d Cir. 1980); SSR 18-1p, 2018 WL 4945639, *6. Although evidence of self-reported symptoms, without more, cannot establish that the claimant is disabled, 42 U.S.C. § 423(d)(5)(A), the Commissioner must consider the extent to which the plaintiff's symptoms mark the existence of a medically determinable impairment. 20 C.F.R. §§ 404.1529; SSR 16-3p, 2017 WL 5180304, *2. The regulations provide a two-step process for evaluating symptoms

5

such as pain, fatigue, shortness of breath, weakness, or nervousness. *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010); *see also* 20 C.F.R. § 404.1529.

First, the ALJ must determine whether medical signs[4] or laboratory findings[5] show the claimant has a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 40 C.F.R. §§ 404.1529(a), (b); SSR 16-3p, 2017 WL 5180304, *3-*4. Second, if the evidence demonstrates the existence of such a medically determinable impairment, the ALJ must determine the extent to which the alleged symptoms limit the claimant's ability to work. 40 C.F.R. §§ 404.1529(a), (b); SSR 16-3p, 2017 WL 5180304, *4-*8. The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3).

### 2. Evaluation of Plaintiff's Heart Condition

Plaintiff first obtained medical treatment for his heart condition in 2011. (Dkt. No. 8-2 at 46; Dkt. No. 8-7 at 13.) At that time, he suffered from left ventricular systolic function between

---

[4] "Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. § 404.1502(g).
[5] "Laboratory findings means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques. Diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X–rays), and psychological tests." 20 C.F.R. § 404.1502(c).

35 and 40%.  (Dkt. No. 8-7 at 13.)  Plaintiff's heart function returned to normal after he underwent a cardiac catheterization in 2011, which resulted in an improved left ventricular ejection fraction of 64% in 2012.  *Id.*  Plaintiff did not seek out subsequent medical treatment after losing his health insurance.  (Dkt. No. 8-2 at 45-47.)

Plaintiff claims to have left his job as a construction worker on October 25, 2018, due to congestive heart failure and emphysema.  (Dkt. Nos. 8-2 at 42, 49-52; 8-6 at 6.)  He testified that he was experiencing chest pains, shortness of breath with exertion, and leg numbness.  (Dkt. No. 8-2 at 48.)  He explained that he experienced chest pain every time he lifted twenty pounds, walked up a flight of stairs, walked a quarter mile, or climbed on something.  *Id.*

In April of 2019, Plaintiff was admitted to the emergency room with complaints of chest pain, shortness of breath, and numbness in both of his legs.  (Dkt. No. 8-7 at 13.)  He reported experiencing these symptoms intermittently for the previous six months.  *Id.*  Plaintiff recovered after a night of rest and drug treatment.  *Id.*  An echocardiogram[6] revealed an estimated ejection fraction between 50 and 55%.  *Id.* at 13-14.  On Plaintiff's discharge, Dr. Thomas D. Slater recommended routine cardiac follow-up appointments with the potential for additional cardiac testing.  *Id.* at 14.

Plaintiff saw Dr. Joseph Pudusseri on May 5, 2019, for a follow-up appointment.  *Id.* at 19.  Dr. Pudusseri had Plaintiff do a treadmill exercise stress test,[7] but Plaintiff was unable to

---

[6] One of the ways to document a cardiovascular impairment under the regulations is with an exercise test, which "may . . . be performed using echocardiography to detect stress-induced ischemia and left ventricular dysfunction (see 4.00C12 and 4.00C13)."  20 C.F.R. pt. 404, subpt. P, app. 1 §4.00C.

[7] "The Secretary uses the results of treadmill exercise testing as the primary basis for deciding disability when the claimant complains of cardiac chest pain precipitated by effort and promptly relieved by nitroglycerin. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 4.00 E–G, 4.04." *Ceballos v. Bowen*, 649 F. Supp. 693, 702 n.6 (S.D.N.Y. 1986).

complete the test due to shortness of breath. *Id.* at 19-21. According to Dr. Pudusseri, the estimated lower ventricular ejection fraction was 50 to 55%, but "[t]he sensitivity of this test is limited by a failure of [the Plaintiff] to achieve target heart rate." *Id.* Dr. Pudusseri further noted, "[t]here was an abnormal stress response in left ventricular ejection fraction," and "global systolic function is at the lower limits of normal." *Id.*

Dr. Pudusseri had Plaintiff undergo another stress test on May 21, 2019. *Id.* at 11-12. Among other conclusions, Dr. Pudusseri determined the myocardial perfusion scan revealed an ejection fraction of 39% with global hypokinesis. *Id.* at 11-12. On May 24, 2019, Dr. Pudusseri's treatment plan notes recommended cardiac catheterization. *Id.* at 196. On June 10, 2019, Plaintiff underwent three heart-related procedures at the hospital: (1) left heart catheterization with right and left coronary angiography; (2) left ventriculogram, PTCA and stenting of mid left circumflex coronary artery; and (3) angio-seal right common femoral artery. *Id.* at 93. A left ventriculogram showed an ejection fraction of 20%. *Id.*

At a follow-up appointment with Dr. Pudusseri on June 28, 2019, Plaintiff complained of shortness of breath when he exerted himself. *Id.* at 191. Dr. Pudusseri told him to avoid strenuous activity, to quit smoking tobacco, and referred him to cardiac rehabilitation. *Id.* At his first day of cardiac rehabilitation, Plaintiff complained of severe chest tightness. *Id.* at 180. The chest tightness resolved after five minutes of rest. *Id.* at 181. At his second day of cardiac rehabilitation, Plaintiff complained of mild chest tightness, which resolved after ten minutes of rest. *Id.* at 173. At another follow-up with Dr. Pudusseri on September 23, 2019, Plaintiff's estimated ejection fraction was 50 to 55%. *Id.* at 164.

On October 31, 2019, Plaintiff complained of daily chest pain that was worsening over the last week and a half. *Id.* at 151. He was admitted to the emergency room, where he

explained that his chest pain occurred when he exerted himself and was becoming increasingly more present without exertion. *Id.* at 125. His chest pain reportedly dissipated when he arrived in the emergency room, where an electrocardiogram "did not show any significant ischemic changes." *Id.* at 129.

Plaintiff was again unable to complete a treadmill stress test at a follow up appointment on November 5, 2019. *Id.* at 104. Dr. Pudusseri's treatment notes indicate that Plaintiff stopped cardiac rehabilitation because of the chest discomfort and shortness of breath experienced during exertion. *Id.* Dr. Pudusseri advised Plaintiff to restart cardiac rehabilitation because his most recent echocardiogram showed "improvement of LV function to 50-55%." *Id.* Dr. Pudusseri also "discussed the risk of sudden cardiac death and the importance of medications as well as lifestyle modifications to stabilize his condition." *Id.* At the next two appointments, on February 2, 2020, and May 8, 2020, Plaintiff reported having a productive cough for one month, *id.* at 259, as well as ongoing intermittent chest pain and shortness of breath, *id.* at 278.

In short, Plaintiff's medical and non-medical records reveal that he had a history of heart problems in 2011 that resolved a year after he underwent cardiac catheterization. (Dkt. No. 8-7 at 13.) His medical records lapsed in the following years, due in-part because he lacked health insurance. (Dkt. No. 8-2 at 45-47.) But beginning in April of 2019, when he regained health insurance, his medical records document ongoing heart problems. (Dkt. No. 8-7 at 11-14, 19-21, 93, 104, 125, 129, 151, 164, 173, 180-181, 191, 259, 278.) From April to June of 2019, Plaintiff's heart condition worsened. *Id.* at 11-14, 19-21, 93, 196. Treatment notes, a failed treadmill stress test, a trip to the emergency room, and echocardiograms document this decline, which culminated in a cardiac catheterization on June 10, 2019. *See id.* Following the cardiac catherization, Plaintiff's echocardiogram results improved—much like his heart condition

improved following a cardiac catheterization in 2011. *Id.* at 11-14, 93, 164. But Plaintiff was still unable to complete a treadmill stress test, he struggled to complete cardiac rehabilitation exercises, he took another trip to the emergency room, and he continued to experience intermittent chest pain and shortness of breath. *Id.* at 104, 125, 151, 173, 180-181, 278.

After reviewing medical records detailing this history, the Commissioner's medical consultants Drs. Randall and Naroditsky determined Plaintiff had a medically determinable impairment. (Dkt. No. 8-3 at 5, 11-12.) On June 19, 2019, Dr. Randall determined Plaintiff had congestive heart failure and emphysema. *Id.* at 5. On July 10, 2019, Dr. Naroditsky reached the same conclusion. *Id.* at 11. They both nonetheless concluded there was insufficient evidence to evaluate whether Plaintiff experienced those disabilities between October 25, 2018, and December 21, 2018. *Id.* at 5, 11-12.

On the second day of the hearing, the ALJ called Dr. Steven L. Shilling, who reviewed the medical records and testified as a medical expert. (Dkt. No. 8-2 at 64-76.) He testified that Plaintiff's failed stress test in May of 2019 indicated Plaintiff was "below average" for his age. *Id.* at 69. He noted Plaintiff's varying ejection fraction rates in 2011 and 2019. *Id.* at 67-68. He recognized that Plaintiff's ejection fraction rates improved following cardiac catheterizations in 2011 and 2019. *Id.* He described Plaintiff's heart condition in June of 2019, "when the ejection fraction was reported to be 20 percent," as a "severe impairment." *Id.* at 68.

Dr. Shilling explained that Plaintiff "had ischemic heart disease . . . in June of 2019 [when] he had a stent placed." *Id.* at 69. Following the procedure, Plaintiff "obtained an excellent result, the remainder of his arteries exhibited only minimal narrowing." *Id.* Based upon these post-operative results—including a normal ejection fraction—Dr. Shilling opined "there should be really no cardiovascular limitations per se other than, than [sic] age and other

medical problems." *Id.* at 70.  Dr. Shilling was sure one of those medical problems was COPD, but he could not "opine on any severity thereof." *Id.* at 69-70.

Dr. Shilling was unable to say "one way or the other" whether Plaintiff experienced cardiac-related functional limitations during the period in question (i.e. October 25, 2018, to December 31, 2018).  *Id.* at 71-72.  He did not doubt that Plaintiff's symptoms started before April of 2019.  *Id.* at 73-74, 76.  But he explained it was "difficult to tell" whether those symptoms derived from the "coronary stenosis found in June of 2019." *Id.* at 74.  If they did, Dr. Shilling opined, "it is likely that those symptoms would have been present in the fall of 2018." *Id.*

On this record, the ALJ concluded no medical signs or laboratory findings demonstrated Plaintiff was impaired between October 25, 2018, and December 31, 2018.  (Dkt. 1-1 at 8-9.)  This conclusion is at odds with the governing legal standard for analyzing claims at step two, and it is unsupported by substantial evidence.  "[T]he standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).  Although it would be easier for Plaintiff to satisfy this standard with contemporary medical records, he can do so with evidence from before or after the relevant time period.  *Arnone*, 882 F.2d at 39; *Cheri Lee H. v. Comm'r of Soc. Sec.*, No. 5:19-CV-10, 2020 WL 109007, at *5 (N.D.N.Y. Jan. 9, 2020); *Norman v. Astrue*, 912 F. Supp. 2d 33, 82 n.74 (S.D.N.Y. 2012).  He has done so here, and substantial evidence does not support the ALJ's conclusion to the contrary.  *See generally Bowen*, 817 F.2d 983, 986 ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability

creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.").

Plaintiff's medical records demonstrate he experienced medically determinable impairments both before and after the relevant time period. (*See* Dkt. No. 8-7.) These records include objective medical evidence that Plaintiff was experiencing a cardiovascular impairment. *See id.* For example, less than a year after the relevant time period, Plaintiff failed two treadmill stress tests. (Dkt. 8-7 at 19-21, 104; *see also* 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 4.00 E–G, 4.04.) Both before and after the relevant time period, echocardiograms indicated that Plaintiff's ejection fraction was significantly below normal. (*See* Dkt. No. 8-7 at 11-13, 93; *see also* 20 C.F.R. pt. 404, subpt. P, app. 1 §4.00C.) Upon reviewing these records, the Commissioner's medical experts determined Plaintiff had congestive heart failure and emphysema. (Dkt. No. 8-3 at 5, 11-12.) The ALJ's medical expert, Dr. Shilling explained that Plaintiff "had ischemic heart disease . . . in June of 2019," describing his reduced ejection fraction at that time as "a severe impairment." (Dkt. No. 8-2 at 68-69.)

Taken together, this evidence satisfies Plaintiff's de minimis burden at step two of the sequential evaluation process. *See Schafenberg,* 858 F. App'x at 456. The ALJ's "failure to acknowledge [this] relevant evidence or to explain its implicit rejection is plain error." *Klemens*, 703 F. App'x at 36–37 (citing *Ceballos v. Bowen*, 649 F. Supp. 693, 702 (S.D.N.Y. 1986)). The ALJ further erred in failing to evaluate and explain the rejection of Plaintiff's reported symptoms. *Genier*, 606 F.3d at 49-50; *see also* 40 C.F.R. § 404.1529(d) ("If you are not doing substantial gainful activity, we consider your symptoms . . . to evaluate whether you have a severe physical or mental impairment(s)"). On remand, the ALJ should continue the sequential

evaluation process by considering Plaintiff's symptoms in accordance with the procedures set forth in 40 C.F.R. § 404.1529.  *See also* SSR 16-3p, 2017 WL 5180304.

### A. Medical Opinion and Prior Administrative Findings Analysis

#### 1. Legal Standard

For disability claims filed on or after March 27, 2017, an ALJ's review of medical opinion evidence[8] and prior administrative medical findings[9] is governed by 20 C.F.R. § 404.1520c.  Under this regulation, applicable here,[10] the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. § 404.1520c(a); *see also Howard D. v. Saul*, No. 5:19-CV-01615 (BKS), 2021 WL 1152834, at *11 (N.D.N.Y. Mar. 26, 2021).  Rather, the ALJ must use five factors to determine the persuasiveness of the medical opinion evidence and prior administrative medical findings: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim."  20 C.F.R. §§ 404.1520c(a)-(c); *see also Howard*, 2021 WL 1152834, at *11.

The two most important factors in this analysis are supportability and consistency.  20 C.F.R. § 404.1520c(b)(2); *see also Howard*, 2021 WL 1152834, at *11. The ALJ is specifically required to "explain how she considered the supportability and consistency factors" when

---

[8] "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in [work related] abilities."  20 C.F.R. § 404.1513(a)(2).

[9] "A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 404.900) in your current claim based on their review of the evidence in your case record, such as . . . [t]he existence and severity of your impairment(s) . . . [or] [t]he existence and severity of your symptoms."  20 C.F.R. §§ 404.1513(a)(5)(i)-(ii).

[10] Plaintiff filed his claim on April 26, 2019.  (Dkt. No. 8-2 at 27.)

determining the persuasiveness of "a medical source's medical opinions or prior administrative medical findings." 20 C.F.R. § 404.1520c(b)(2); *see also Howard*, 2021 WL 1152834, at *11. "If the ALJ fails adequately to explain the supportability or consistency factors, or bases her explanation upon a misreading of the record, remand is required." *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19CV4630LJLBCM, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted by*, No. 19-CV-4630 (LJL), 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021); *see also Howard*, 2021 WL 1152834, at *12 (observing "courts have remanded where an ALJ did not adhere to the regulations") (collecting cases).

Under the supportability factor, the more a medical opinion or prior administrative medical finding is reinforced by "relevant . . . objective medical evidence and supporting explanations," the "more persuasive" it will be. 20 C.F.R. § 404.1520c(c)(1); *Carmen M. v. Comm'r of the Soc. Sec. Admin*, No. 20-CV-06532-MJR, 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) ("The 'supportability' factor asks how well a medical source supported their opinion(s) with 'objective medical evidence' and 'supporting explanations.'"). Under the consistency factor, a medical opinion or prior administrative medical finding is "more persuasive" if it is consistent "with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2); *Galo G. v Comm'r of the Soc. Sec. Admin*, No. 3:20-CV-1011 (FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021) ("The regulations provide that with respect to consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be.").

"An ALJ must consider, but is not required to discuss, the three remaining factors when determining the persuasiveness of a medical source's opinion." *Howard D.*, No. 2021 WL

1152834, at *11; *see also* 20 C.F.R. §§ 1520c(a), (b)(2).  However, where the ALJ has found two or more divergent medical opinions to be equally well supported and consistent with the record, the ALJ must articulate how he or she evaluated the three remaining factors.  20 C.F.R. §§ 404.1520c(b)(3).

### 2. Evaluation of the Medical Opinion and Prior Administrative Findings

The ALJ found persuasive the medical opinion of Dr. Shilling and the prior administrative medical findings of Drs. Randall and Naroditsky.  (Dkt. No. 1-1 at 8.)  According to the ALJ, Dr. Shilling's opinion was persuasive because of his "professional expertise, program expertise, and ability to review the entire record."  *Id.*  The ALJ found persuasive Dr. Shilling's opinion that Plaintiff did not have a medically determinable impairment between October 25, 2018, and December 31, 2018, because Plaintiff had not sought medical care during that time, and his heart condition was apparently decent in 2012.  *Id.*  The ALJ provided no explanation for why he found the prior administrative medical findings of Drs. Randall and Naroditsky persuasive.  *Id.*

The ALJ provided no substantive explanation—as required under 20 C.F.R. § 404.1520c(b)—for these findings.  *See Rivera*, 2020 WL 8167136, at *14; *Howard*, 2021 WL 1152834, at *12.  The ALJ failed to explain why or how he concluded Dr. Shilling's medical opinion and the prior administrative medical findings of Drs. Randall and Naroditsky were supported by "objective medical evidence and supporting explanations."  *See* 20 C.F.R. §§ 404.1520c(b)(2), (c)(1).  The ALJ also failed to explain why or how he concluded Dr. Shilling's medical opinion and the prior administrative medical findings of Drs. Randall and Naroditsky were consistent "with the evidence from other medical sources and nonmedical sources in [Plaintiff's] claim."  *See* 20 C.F.R. §§ 404.1520c(b)(2), (c)(2).  Moreover, the ALJ's findings

include no analysis or discussion of Plaintiff's numerous medical records from 2019. (*Compare* Dkt. No. 1-1 at 8-9, *with* Dkt. No. 8-7.) Absent some indication that the ALJ considered these records, this Court cannot discern whether and to what extent the ALJ's findings are based upon an examination of supportability and consistency.

Thus, the Court finds the ALJ also failed to follow the legal standard for evaluating the persuasive value of medical opinions and prior administrative medical findings set forth under 20 C.F.R. § 404.1520c(b). In so doing, the ALJ left important questions unanswered—questions that the ALJ must answer in the first instance before this Court can conduct meaningful review. *See Pratts*, 94 F.3d 34, 39. This case is accordingly remanded. *See Rivera*, 2020 WL 8167136, at *14; *Howard*, 2021 WL 1152834, at *12.

**I.      CONCLUSION**

Considering the foregoing, the Court finds the Commissioner's decision was not based upon correct legal standards and substantial evidence does not support the determination that Plaintiff was not under a disability within the meaning of the Social Security Act.

**WHEREFORE**, it is hereby

**ORDERED** that the decision of the Commissioner is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Decision and Order; and it is further

**ORDERED** that the Clerk provide a copy of this Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

IT IS SO ORDERED.

Dated:      December 1, 2021
            Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge